# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| GT ROOFING COMPANY I, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-2018 CAS |
| | ) | |
| MICHAEL R. KILLION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ripe for review. For the following reasons, the Court grants defendants' motion to dismiss.

### *I. Background*

Plaintiffs GT Roofing Company I LLC, GT Roofing Company II LLC, GT Roofing Company III LLC, GT Roofing Company IV LLC (collectively known as the "Turner Companies") and George Turner bring their complaint against defendants Michael R. Killion and David L. Killion (collectively "the Killions" or "defendants") for violations of the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. ("RICO") and for fraud under state law.

The allegations in the Complaint arise from a purchase agreement for the sale of Mr. Turner's roofing business to the Killions. Plaintiffs allege, among other things, that defendants have failed from the beginning to make the requisite payments under the purchase agreement, and that defendants have misrepresented their sales figures in tax returns and in payment statements mailed to plaintiffs.

Plaintiffs bring three claims against the Killions for: conduct and participation in a RICO enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962© ("Count I"); conspiracy in a RICO enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(d) (Count II); and state law fraud ("Count III").

In the motion before the Court, defendants move to dismiss all three claims on the grounds that the claims are not alleged with the requisite specificity, and that the Complaint fails to allege the required elements of the claims. Plaintiffs oppose the motion.

## *II. Standard*

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of its allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir.)(citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted). This standard "simply

calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed. R. Civ. P. The Eighth Circuit has also held that a RICO claim must be pleaded with particularity under Rule 9(b). Crest Const. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (citing Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009)). Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims." United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003) (cited case omitted). "Under Rule 9(b), a plaintiff must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted). See also Commercial Prop. Inv. v. Quality Inns Int'l, 61 F.3d 639, 644 (8th Cir. 1995). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his [or her] alleged participation in the fraud." Steambend Props II, LLC v. Ivy Tower Minneapolis,LLC, 781 F.3d 1003, 1013 (8th Cir. 2015) (quoting DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id; Fed. R. Civ. P. 8(a)(2). Materials attached to the complaint as exhibits may

be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

### III.  *Allegations in the Complaint*

According to the Complaint, Mr. Turner and the Killions entered into negotiations sometime in 2012. As a result of the negotiations, the Killions agreed to purchase the assets of the Turner Companies from Mr. Turner. The Killions created a number of companies for purposes of acquiring of the Turner Companies, including South Side Roofing Company Acquisition, Inc. ("SSRCA"), Afton Roofing, LLC, South Side Roofing and Sheetmetal LLC, South Side Roofing Company, LLC, South St. Louis and Afton Roofing Company, LLC, and South Side Roofing Company, Inc. (collectively known as the "SSRCA Companies"). On November 20, 2012, the Turner Companies and SSRCA entered into a "Purchase Agreement," a copy of which was attached to the Complaint. Under the terms of the Purchase Agreement, SSRCA agreed to pay Mr. Turner and the Turner Companies under a ten-year payment plan. Payments under the plan would be based on the sales generated by the operation of the purchased roofing business. In general, SSRCA was to pay Turner and Turner Companies 15% of sales payable on a quarterly basis until it had paid $2,250,000.00.

Plaintiffs allege that from the beginning defendants failed to make the requisite payments under the Purchase Agreement. They allege defendants failed to timely pay $6,625.55 owed for the fourth quarter of 2012. Plaintiffs further allege that in 2013 defendants prepared federal tax returns for South Side Roofing Company, Inc. with understated sales figures. More specifically, plaintiffs allege with regard to the 2013 tax returns that:

> 31.  The 2013 Tax Returns claims the SSRCA Companies had $1,234,508 in sales receipts.

> 32. The sales receipts stated in the 2013 Tax Returns are an intentional and fraudulent deception.
>
> 33. The Killions through the SSRCA Companies generated profit and loss statements ("P&L Statements") [that] claimed sales receipts of $1,739,444.
>
> 34. The Killions have no legitimate justification for the inconsistent reporting of the sales receipts between the P&L Statements and the 2013 Tax Returns, which reflect a difference of $504,936.
>
> 35. Additionally, the sale receipts stated in the P&L Statements do not accurately state the gross sales receipts, for they, on information and belief, do not include money received by the SSRCA Companies which should be included as gross sales receipts.
>
> 36. An SSRCA Companies' sales person told Turner, the SSRCA Companies 2013 sales equaled to or exceeded $2,000,000.

Doc. 1 at 8-9. Plaintiffs allege that the Killions "intentionally used the fraudulently stated $1,234,508 sales figure stated in the 2013 Tax Returns to support the underpayment for the company assets." Doc. 1 at 9.

Plaintiffs further allege that the Killions provided Mr. Turner statements with false sales data. Attached to the Complaint is a letter signed by David Killion to Mr. Turner dated January 8, 2014. The letter contains a table of payments SSRCA made in 2013 under the terms of the Purchase Agreement. The letter states that the payments were based on a $1,234,508 yearly sales figure for South Side Roofing Co., which plaintiffs maintain was fraudulently understated.

Plaintiffs allege that after receipt of this letter, Turner and the Turner Companies requested an accounting to address the calculation of sales. The Killions allegedly denied the request, and refused to provide evidence of the actual sales receipts "in order to continue the deception and fraud." Doc. 1 at 10.

Attached to the Complaint is a second letter signed by David Killion to Mr. Turner dated April 7, 2014. The letter purports to indicate the amount owed to Mr. Turner for the first quarter of 2014, plus "amounts owed for 2012," less "overcharges for retained number." Doc. 1, Ex. 4. Plaintiffs allege that the April 7, 2014 letter "perpetuated the fraud as to prior payments, as it did not amend the payments regarding 2013, did not accurate [sic] account as to the payments owed, nor did it accurately represent the known gross sales receipts at that juncture." Doc. 1 at 11.

Plaintiffs allege that "in the summer of 2014," the Killions met with Mr. Turner and admitted that they "intentionally, knowingly, and deceptively" underpaid money owed under the Purchase Agreement, and that an additional $180,000.00 was owed. The Complaint alleges the Killions tried to force Mr. Turner to enter into a new agreement.

## *IV. Discussion*

The Racketeer Influenced and Corrupt Organizations Act (RICO) prohibits certain conduct involving a "pattern of racketeering activity," and makes a private right of action available to "[a]ny person injured in his business or property by reason of a violation" of RICO's substantive restrictions, provided that the alleged violation was the proximate cause of the injury." 18 U.S.C. § 1962, § 1964 (c); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 454 (2006) (quoting Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (1992)). Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Nitro Distrib., 565 F.3d at 428 (quoting 18 U.S.C. § 1962(c)). "RICO provides a private right of action for any person 'injured in his business or property by reason of a

violation of' its substantive prohibitions." Dahlgren v. First Nat'l Bank of Holdrege, 533 F.3d 681, 689 (8th Cir. 2008) (quoting 18 U.S.C. § 1964(c)). RICO, however, "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." Gamboa v. Velez, 457 F.3d 703, 705 (7th Cir. 2006).

### A. No Pattern of RICO Racketeering Activity

Count I of the Complaint alleges a violation of RICO under 18 U.S .C. § 1962(c). To state a claim under § 1962(c), plaintiffs must adequately plead: "(1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity." In re Sac & Fox Tribe of Miss. in Ia./Meskwaki Casino Litig., 340 F.3d 749, 767 (8th Cir. 2003) (construing 18 U.S.C. § 1962(c)). Further, the plaintiff must also show that a defendant's RICO violation was the proximate cause of the plaintiff's injury. Hemi Grp., LLC v. City of N.Y., N.Y., 559 U.S. 1, 8–9 (2010) (construing 18 U.S.C. § 1964(c)). The requirements of § 1962(c) must be established as to each individual defendant. Craig Outdoor Adver. v. Viacom Outdoor, 528 F.3d 1001, 1027-8 (8th Cir. 2008).

The Court has carefully reviewed the Complaint and finds plaintiffs have failed to adequately allege a claim under § 1962(c) because they have not alleged conduct that constitutes a pattern of racketeering activity. The pattern element "requires at least two acts of racketeering activity that are related" and must "amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237–38 (1989), United HealthCare Corp. v. American Trade Ins. Co., Ltd., 88 F.3d 563, 571 (8th Cir. 1996). The relationship prong of the pattern element is satisfied if the predicate acts "'have the same or similar purposes, results, participants,

victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Handeen v. Lemaire, 112 F.3d 1339, 1353 (8th Cir. 1997) (quoting H.J. Inc., 492 U.S. at 240). The second prong, continuity, can be either closed-ended or open-ended. Closed-ended continuity involves "a series of related predicates extending over a substantial period of time;" open-ended continuity involves conduct that by its nature threatens repetition going forward. See H.J. Inc., 492 U.S. at 241–42.

Here, plaintiff allege three predicate acts of racketeering that they contend amount to either mail fraud or wire fraud: the 2013 tax return for South Side Roofing Company, Inc. (the "Tax Return"); the "written statement" to Mr. Turner dated January 4, 2014, which was signed by David Killion; and the "written statement" to Mr. Turner dated April 7, 2014, which was also signed by David Killion.[1] Even if plaintiffs' allegations amounted to predicate acts – an issue the Court does not reach – the alleged conduct does not amount to a pattern of racketeering activity because plaintiffs fail to plead facts to establish continuity.

The conduct does not amount to closed-ended continuity because the alleged predicate acts took place within a matter of months. The Eighth Circuit has held that closed-ended continuity "can be shown by related acts continuing over a period of time lasting at least one year...." United States v. Hively, 437 F.3d 752, 761 (8th Cir. 2006). See also Crest Const. II, Inc., 660 F.3d at 357 (rejecting as close-ended continuity fraudulent conduct that lasted less than seven months), Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir. 1993) (holding that a fraudulent scheme lasting ten or eleven months was not legally sufficient to constitute a

---

[1] Plaintiffs also allege tax fraud as a predicate act defendants committed. Tax fraud, as defined under 18 U.S.C. § 7201, is not a predicate act listed under the RICO statute. See 18 U.S.C. § 1961.

pattern of racketeering); Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank, 934 F.2d 976, 981 (8th Cir. 1991) ("[T]his case involves, at most, a plan to defraud a single company in connection with a single set of loan agreements.... [A] single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim."). The two written statements were dated only three months apart. As for the Tax Return, plaintiffs do not allege when it was mailed or filed. Presumably it was filed sometime after January 1, 2014, and before the date this suit was filed, December 8, 2014. Therefore, even if the Court were to consider the filing of the 2013 Tax Return as a predicate act, it falls within a matter of months of the other two alleged predicate acts as well, which is not enough to amount to a pattern of racketeering activity.

Plaintiffs argue in their response memorandum that the threat of racketeering in this case is on-going and, therefore, there is open-ended continuity. They argue that the defendants' conduct is open-ended because "(a) it was designed to continually defraud Mr. Turner and the Turner Companies during the course of the entire ten year term of the Purchase Agreement, and (b) was established to be the Killions' regular way of conducting business." Doc. 7 at 10. These are entirely conclusory allegations. There are no factual allegations to indicate that defendants intended to continue to send fraudulent communications. Moreover, there are absolutely no factual allegations that defendants indeed regularly engaged in fraud or that there were other victims. In the Court's view, plaintiffs are conflating underpayment under the terms of the Purchase Agreement with mail and wire fraud. The former amounts to breach of contract and the latter are criminal acts that are prohibited under RICO. There is nothing in the Complaint to suggest that there is an ongoing risk that defendants would continue to commit mail or wire fraud – if they ever did in the first place.

Certainly there are allegations in the Complaint that defendants do not intend to fully perform under the terms of the Purchase Agreement and that they made misrepresentations to plaintiffs. But failure to pay under the Purchase Agreement is a breach of contract – not criminal activity – and if defendants failed to perform under the terms of Purchase Agreement or made misrepresentations, plaintiffs would have a remedy in a state court cause of action, which they are already pursuing.[2]

The Eighth Circuit has warned that district courts should be wary of attempts to convert ordinary civil disputes into RICO cases. RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." Crest Constr. II, Inc., 660 F.3d at 353 (quoted case omitted). "We have in the past rejected attempts to convert ordinary civil disputes into RICO cases. . . . RICO was not intended to apply to 'ordinary commercial fraud.'" Craig Outdoor Adver., 528 F.3d at 1029 (8th Cir. 2008) (quoting Terry A. Lambert Plumbing, Inc., 934 F.2d at 981). See also Stonebridge Collection, Inc. v. Carmichael, — F.3d — , 2015 WL 3918868, at *9 (8th Cir. Jun. 26, 2015) (affirming dismissal of RICO claim as commercial dispute). Plaintiffs have alleged that defendants breached the Purchase Agreement, but they have failed to satisfy the more onerous pleading requirements of RICO. Having carefully reviewed the complaint, the Court finds plaintiffs have failed to state a claim for RICO violations.

**B.     RICO conspiracy**

In Count II plaintiffs attempt to allege a claim of RICO conspiracy based on the same conduct addressed above. RICO makes it "unlawful for any person to conspire to violate any of the

---

[2]Defendants note in their response memorandum that plaintiffs have filed suit against defendants and other entities in state court in a case which is captioned GT Roofing Company I, LLC, et al. v. South Side Roofing Company Acquisition, Inc., Cause No. 14AL-CC01521.

provisions of subsection (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d) (1994). The Supreme Court has held that in order to state a claim of RICO conspiracy under § 1962(d), a plaintiff must have sustained injury by "an overt act" that is "an act of racketeering or otherwise wrongful under RICO." Beck v. Prupis, 529 U.S. 494, 506-7 (2000). See also Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 954 (8th Cir. 1999). Here, plaintiffs have failed to allege wrongful RICO activity and therefore they fail to state a claim of RICO conspiracy under § 1962(d).

**C.     Fraud**

In Count III, plaintiffs bring a claim of fraud against defendants under state law. The Court declines to exercise supplemental jurisdiction over this state law claim. Under 28 U.S.C. §1367(c)(3), district courts may decline jurisdiction over state claims as a "matter of discretion." Hassett v. Lemay Bank and Trust Co., 851 F.2d 1127, 1130 (8th Cir. 1988). The Supreme Court has stated that if "the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). The Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues whenever possible" and the "necessity to provide great deference and comity to state court forums to decide issues involving state law questions." Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir. 1990). Here all the parties are citizens of Missouri so there is no diversity jurisdiction, and there is already a suit in state court addressing payments under the Purchase Agreement. Therefore, this Court declines jurisdiction over plaintiffs' fraud claim and finds no need to examine the merits of the state law claim.

### *V. Conclusion*

In sum, the Court finds plaintiffs have failed to state a claim for violations of RICO. The conduct alleged in the Complaint does not meet the heightened requirements of Rule 9(b). Even if the Court were to find that the alleged conduct of the defendants did constitute predicate acts under RICO, plaintiffs have not alleged a pattern of racketeering. The alleged conduct took place over a matter of a few months, and plaintiffs have not adequately alleged that there is an ongoing threat of criminal activity. As for plaintiffs' state law claim of fraud, the Court declines to exercise supplemental jurisdiction over this claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendants David Killion and Michael Killion's motion to dismiss is **GRANTED.** [Doc. 9] The Court dismisses with prejudice Count I and II of plaintiffs' Complaint. The Court declines to exercise supplemental jurisdiction over the remaining state law fraud claim, and dismisses Count III without prejudice.

An appropriate Order of Dismissal will accompany this Memorandum and Order.

								_____
								**CHARLES A. SHAW**
								**UNITED STATES DISTRICT JUDGE**

Dated this   13th   day of July, 2015.